RENDERED: JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0817-ME

CONAN BROOKS                                                                 APPELLANT

v.      APPEAL FROM JEFFERSON CIRCUIT COURT
        FAMILY DIVISION TWO (2)
        HONORABLE SHELLEY SANTRY, JUDGE
        ACTION NO. 22-D-504141-002

EMILY BROOKS                                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: Appellant, Conan Brooks ("Conan"), appeals the Jefferson

Family Court's issuance of a Domestic Violence Order ("DVO") against him on

behalf of the Appellee, Emily Brooks ("Emily"). Conan argues the family court

erred because there was no basis for its finding that domestic violence occurred

and is likely to occur again. He further argues the family court abused its

discretion by considering allegations from a previous petition which had been

dismissed with prejudice by agreement. We conclude the family court did not err in its factual findings, nor did it abuse its discretion. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

This is the second domestic violence petition Emily has filed against Conan. Emily and Conan were previously married, and they were divorced by decree of dissolution entered by the Jefferson Family Court in February 2023. Prior to the decree, while the divorce action was pending, Emily filed her first petition in December 2022. This petition was voluntarily dismissed with prejudice as part of the subsequent marital settlement agreement.

Emily filed this second domestic violence petition in May 2023, after events occurring five days earlier at the parties' son's track practice. Based on the petition, an emergency protective order ("EPO") was entered the same day. The petition stated Conan lost his temper, and in an angry outburst, was shouting at and threatening Emily. Emily further explained that this angry behavior had been escalating. She claimed the children were afraid of Conan as he had hit the oldest child on several occasions. She also went into detail of prior incidents when Conan had hurt or frightened her, including shooting her in the face with a Super Soaker water gun at close range and jumping onto a car she was driving while screaming at her to get out of the car. Emily stated in the petition that these

incidents occurred in the presence of the children. These past allegations were also included in Emily's initial domestic violence petition that was later dismissed.

A hearing was held on Emily's petition on June 20, 2023. Prior to any testimony being heard by the family court, Conan objected to the court's considering any allegations in the new petition included in the first petition, as it had been dismissed with prejudice. The family court indicated it wanted to focus on the new events that occurred in May, but it would hear some testimony regarding the prior incidents.

Emily testified as to the events that occurred at the May track practice. She stated Conan screamed at her in front of their son as well as the other participants and their families. She claimed he yelled obscenities at her and described his actions as "untethered." She said she was "terrified" of him because he was unable to stay calm in front of a crowd of people. Emily testified his outbursts initially only occurred in the home, but it has now escalated to where he is yelling at her in public, without regard for who is there to witness his behavior. She also testified as to Conan's previous mental health struggles.

The family court additionally interviewed the parties' minor child in chambers about the events that occurred at his practice. The child confirmed that Conan had yelled at Emily at his track practice in front of everyone. He stated he

was embarrassed by this behavior. He also said that he enjoys seeing his dad and misses him, as he had not seen him in a few weeks.

The family court issued a DVO in favor of Emily against Conan. The family court declined to issue an order on behalf of the minor children. This appeal follows.

## STANDARD OF REVIEW

A review of the family court's decision regarding an entry of an order of protection is limited to "whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). A family court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## ANALYSIS

Conan claims the family court erred in its issuance of a DVO on Emily's behalf. He first argues that no basis existed for the family court to find that domestic violence had occurred and may again occur. He further argues that the family court abused its discretion in relying on facts previously pled in a petition that had been dismissed with prejudice.

Domestic violence orders are governed by KRS[1] Chapter 403. To enter a Domestic Violence Order, a family court is required to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. KRS 403.740. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn*, *supra* at 580. "The definition of domestic violence and abuse, found in KRS 403.720(1), includes 'physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members.'" *Abdul-Rahman v. Peterson*, 338 S.W.3d 823, 825 (Ky. App. 2011).

Conan argues there were no allegations that Emily endured any physical injury, serious physical injury, stalking, sexual assault, strangulation, or assault, and therefore the only basis upon which to issue a DVO would be the infliction of fear of imminent physical injury or serious physical injury. We agree with this contention, and the family court appeared to agree as well.

Conan specifically takes issue with the family court's finding that Emily's fear was reasonable or imminent. He argues the facts within this case do not support a finding that Emily had a reasonable fear of imminent physical injury.

---

[1] Kentucky Revised Statutes.

He points to the fact that Emily did not file the domestic violence petition until five days after the events occurred. There was also testimony that the parties attended the child's sporting events after the track practice and sat near one another with no incident.

KRS 503.010(3) defines "imminent" as "impending danger, and, in the context of domestic violence and abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." Despite Conan's testimony that he has never caused Emily any physical injury, he admitted that he did shoot her twice in the face with a water gun. This admission, coupled with Emily's testimony of his escalating behavior, is adequate evidence to sustain a finding of fear of imminent physical injury.

Emily explained that she waited five days to file the domestic violence petition based on the advice of the personnel at the Domestic Violence Intake Center. The family court accepted this explanation for the delay. It is within the family court's purview to weigh the credibility of the witnesses. *Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. App. 2007).

Conan cites to the unpublished case of *Kouns v. Kemper* to support his argument that Emily's fear was unreasonable. *Kouns* is inapplicable. In *Kouns*, this Court reversed the issuance of a DVO because the applicants had not had any contact with the Respondent in over a year, and thus, their fear of him was not

reasonable. We held "that any unreasonable fear cannot form the basis of a finding of domestic violence." *Kouns v. Kemper*, No. 2020-CA-1335-ME, 2021 WL 3435538, at *9 (Ky. App. Aug. 6, 2021). By contrast, we do not believe Emily's fear in this case was unreasonable.

We find the facts of this case more analogous to those of *Hohman v. Dery*, 371 S.W.3d 780 (Ky. App. 2012). In that case, the petitioner "believed [Respondent] was unable to control his emotions and that she feared his aggressive confrontations would escalate 'to the next level.'" *Id.* at 783. Likewise, Emily testified Conan's behavior had been continually escalating, in that his previous outbursts only occurred within the home, while the one cited in her petition occurred in public, with no regard as to who could witness it.

Conan argues the family court could not consider any allegations contained in the previous domestic violence petition because it had been dismissed with prejudice. But the family court did not rely on those allegations in its finding that an act of domestic violence had occurred. While the family court used the allegations as historical background, those actions were not the primary basis of the court's present findings.

A family court is not required to disregard the history of the case or of the parties. *See Baird, supra*, at 388. The fact that a prior petition was ultimately dismissed does not erase the evidence and facts which may have supported the

initial issuance of an order. While Conan may argue that the family court should not have based this DVO *solely* on the prior allegations made in the dismissed petition, the family court is allowed to consider them in the context of the parties' history and how that history figures into a current risk of future harm.

Conan is making similar arguments as the Appellant in the case of *Walker v. Walker*, 520 S.W.3d 390 (Ky. App. 2017). In that case, this Court stated:

> [Appellant] argues that the sole act of domestic violence, which occurred in November of 2012, because it was addressed in the first DVO, as a matter of law, cannot be considered in determining whether to issue the second DVO. He argues that it meets all of the elements of issue preclusion under *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010).
>
> However, KRS 403.735 expressly allows courts to look back and consider prior protective orders. It authorizes courts to "obtain the respondent's Kentucky criminal and protective order history and utilize that information to assess what relief and which sanctions may protect against danger to the petitioner . . . ." KRS 403.735(1)(a). While that provision concerns what relief is appropriate rather than the entitlement to relief itself, the fact that the provision allows for prior orders to be considered is illustrative. Further, the illustrative nature of KRS 403.735(1)(a) becomes all the more persuasive when examining KRS 403.740, which does not exclude prior orders from consideration. In fact, on this issue KRS 403.740 only requires a court determine whether domestic violence has occurred at some point in the past. KRS 403.740(1).

*Id.* at 392.

Conan makes much of the family court's finding that the child did not witness the water gun incident and was only aware of it because Emily told him about it. Yet, Conan acknowledged that the incident did occur, and he conceded that the children could have witnessed it because they were present in the home when it occurred. Just because the children apparently did not see this act on this occasion does not mean the family court must disregard it. Again, the family court did not include the minor children in the DVO; it protected only Emily.

When reviewing the issuance of a Domestic Violence Order, "the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). We give great deference to our trial courts as the finders of fact. "It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "The trier of fact may take into consideration all the circumstances of the case, including the credibility of the witness[es]." *Id.* We do not believe the family court abused its discretion.

**CONCLUSION**

The Jefferson Family Court's findings of fact are supported by the evidence and are not clearly erroneous. The Jefferson Family Court acted within its discretion. We AFFIRM the Jefferson Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:      BRIEF FOR APPELLEE:

Jason A. Bowman           Scott Karem
Louisville, Kentucky        Louisville, Kentucky